VERMONT SUPERIOR COURT
Windsor Division

PETER DERNIER AND NICOLE DERNIER,

      *Plaintiffs*,

v.

MORTGAGE NETWORK, INC., MS. IRYNA GROSHEV,
MR. DOUGLAS N. SMITH, MR. ROBERT A. MCINNES,
K&L GATES LLP, MR. TIMOTHY R. DEMARCO, MR. JEFFREY S. PATTERSON

      *Defendants*.

CIVIL DIVISION
Docket No.

USDC - DVT
2:20-cv-56

## COMPLAINT

Now comes Plaintiffs Peter A. Dernier And Nicole H. Dernier ("Plaintiffs" or "Derniers"), *Pro Se* for their complaint against Defendants, Mortgage Network, Inc. (MNI), Iryna Groshev (Groshev), Douglas N. Smith (Smith), Robert A. McInnes (McInnes), K&L Gates LLP (K&L), Timothy R. DeMarco (DeMarco), Jeffrey S. Patterson (Patterson), and they hereby state as follows.

### JURISDICTION AND VENUE

1. Jurisdiction and venue are proper in this Court pursuant to 12 V.S.A. § 402(a) because Plaintiffs reside in Windsor County, Weston Vermont.

### DEMAND FOR JURY TRIAL

2. Pursuant to Vt. R. Civ. P. Rule 38, Plaintiffs demand a jury trial.

FILED
FEB 28 2020
VERMONT SUPERIOR COURT
WINDSOR UNIT

## PARTIES

3. Plaintiffs Peter and Nicole Dernier are residents of the Town of Weston, County of Windsor, and State of Vermont.

4. Defendant MNI is an independent mortgage lender that maintains its principal place of business in Danvers, Massachusetts.

5. MNI does business in Vermont and is a registered entity with the Vermont Secretary of State.

6. Defendant Groshev is an employee of MNI and resides in Massachusetts.

7. Defendant Smith is an employee of MNI and resides in Maine.

8. Defendant McInnes is the CEO of MNI and resides in Maine.

9. Defendant K&L Gates LLP is a law firm and has offices in Boston, Massachusetts.

10. Defendant DeMarco is an employee of K&L and resides in Massachusetts.

11. Defendant Patterson is an employee of K&L and resides in Massachusetts.

## FACTUAL BACKGROUND

### INTRODUCTION

12. This matter is being filed by the Plaintiffs seeking damages for common law fraud, attorney's fees and costs. Defendants in this matter have intentionally misrepresented material facts, effecting the essence of Plaintiffs' promissory note (Note) that were false when made by Defendants and known to be false by Defendants when made - in the matter of ***Dernier v US Bank, NA (2:16-cv-00230-wks)***. A copy of Plaintiffs' Note with forged indorsements included

2

hereto as **[EXHIBIT A]**.

13. Wells Fargo Bank National Association (WFB) claimed to be entitled to enforce the Note and initiated foreclosure against Plaintiffs starting on November 6, 2009. A copy of WFB's March 10, 2014 letter confirming the date WFB initiated foreclosure proceedings attached hereto as **[EXHIBIT B]**.

14. Plaintiffs were able to contact former MNI employee, Chad Goodwin (Goodwin), and received from him on March 15, 2014 via US Mail a Sworn Affidavit in which he attested that in fact the indorsement stamp and indorsement signature on the Note were forgeries. A copy of Goodwin's Sworn Affidavit is attached hereto as **[EXHIBIT C]**.

15. In response to the Goodwin Affidavit, K&L submitted to Plaintiffs via email on or around June 29, 2016 a Ratification and Consent (R&C) signed by McInnes, president of MNI, in an attempt to rebut the Goodwin Affidavit with the intent that Plaintiffs would rely on the R&C as a lawful ratification of the forged Goodwin indorsements. A copy of the R&C is attached hereto as **[EXHIBIT D]**.

## SUBPOENA DUCES TECUM - MNI

16. Plaintiffs sought to determine specific details of the drafting, production and signing of the R&C and whether it could lawfully ratify the forged Goodwin indorsements so they served on January 8, 2020 via US First Class Mail a Judicial Subpoena Duces Tecum, attached hereto, as **[EXHIBIT E]** on MNI demanding sworn, unredacted documentary evidence which would confirm that:

   a. The Note had been delivered by MNI to Select Portfolio Servicing, Inc. (SPS) in December 2005 without the forged Goodwin indorsement stamp and the forged Goodwin indorsement signature.

   b. The methodology and process in which the R&C was drafted, negotiated and signed by McInnes.

17. One hundred pages of documentary evidence were received from

3

MNI via FEDEX on February 14, 2020 in response to Plaintiffs' Judicial Subpoena Duces Tecum, which are attached hereto as **[EXHIBIT F]**. The documents confirm that:

a. The Note was delivered on or around November 4, 2005 to SPS from MNI without the forged Goodwin indorsement stamp and without the forged Goodwin indorsement signature. A copy of the Note without the forged Goodwin indorsements, which is included in the one hundred page MNI response, is attached hereto as **[EXHIBIT G]**.

b. Patterson, representing WFB, wrote a Demand Letter to MNI on June 17, 2015 alleging that the Note had been fraudulently transferred to US Bank N.A. as Trustee for CSMC Mortgage-Backed, Pass-Through Certificates, Series 2006-3 (USB). Patterson demanded payment from MNI of $247,209.90. Patterson also demanded that MNI indemnify USB against claims made by Plaintiffs against USB related to the fraudulent transfer of the Note.

c. A scan of the Patterson Demand Letter was sent via attachment to a June 17, 2015 DeMarco email to Groshev. Both documents, which are included in the one hundred page MNI response, are attached hereto as **[EXHIBIT H]**

d. Smith replied to Patterson in a July 17, 2015 letter and wrote that:

   i. "In looking at the mark, I cannot tell if it is a signature at all."

   ii. "I also find the typing of the pay to the order of language

4

        interesting as that was not Mortgage Network, Inc.'s practice and according to your allegations would present a possible additional unidentified party who was writing on the document."

    iii. "I can provide an allonge if needed since the note endorsement may never have been signed, however since Mortgage Network, Inc. did not sell the loan (Note) to Wells Fargo or US Bank I can only have it endorsed and payable to someone the loan was sold to."

e. A copy of Smith's reply letter, which is included in the one hundred page MNI response, is attached hereto as **[EXHIBIT I]**.

f. Subsequent emails with attachments were sent on June 29, 2016 between DeMarco and MNI's Smith and Groshev which detail the drafting and production of the R&C that was then signed by McInnes. Copies of these emails, which are included in the one hundred page MNI response, are attached hereto as **[EXHIBIT J]**.

g. The June 17, 2015 claim by K&L to MNI that the Note had been fraudulently transferred to USB by MNI is a specific and direct contradiction to the claim WFB made to Plaintiffs in April 12, 2011 that the Note had been lawfully transferred to USB.

h. No documentary evidence was received in the one hundred pages of the MNI response that confirms whether or when WFB, K&L, Patterson and DeMarco withdrew WFB's June 17, 2015 Demands to MNI.

## SUBPOENA DUCES TECUM - WFB

18. In order to cross verify the evidence received in response from MNI, Plaintiffs served a Judicial Subpoena Duces Tecum on January 8, 2020 via US First Class Mail on WFB demanding sworn, unredacted documentary evidence which would confirm that the Note received by WFB on or around May 1, 2006 from the previous servicer SPS did not have the forged Goodwin indorsement stamp and forged Goodwin indorsement signature. A copy of Plaintiffs' Judicial Subpoena Duces Tecum to WFB is attached hereto as **[EXHIBIT K]**.

19. Three hundred and seventy pages of sworn, unredacted documentary evidence were received from WFB via secure server DROPBOX on February 14, 2020 in response to the subpoena, which are attached hereto as **[EXHIBIT L]**, and those documents confirm that:

a. The Note received from SPS on or around May 1, 2006 by WFB did not have the forged Goodwin indorsement stamp and the forged Goodwin indorsement signature. The only copy of the Note, which is included in the 370 pages of the WFB response, is confirmed to not contain the forged Goodwin indorsements, and is attached hereto as **[EXHIBIT M]**.

b. The Note was in the exclusive care, custody and control of WFB when the forged indorsement stamp and forged indorsement signature were applied. A copy of the Certification of the content of WFB's response by Jose Luis Nunez, which is included in the 370 pages of the WFB response, is attached hereto as **[EXHIBIT N]**.

6

c. No documentary evidence was received in the 370 pages of the WFB response that confirms whether or when WFB, K&L, Patterson and DeMarco withdrew WFB's June 17, 2015 Demands to MNI.

## RATIFICATION

As a general rule, ratification is retroactive, relating back to when the agent performed the unauthorized act and is equivalent to original authority. In other words, ratification operates upon the act ratified precisely as though the authorized person had previously given the agent authority to do the act or had performed the act.

Such retroactivity, however, is subject to a qualification that the intervening rights of third persons cannot be defeated by the ratification. For example, if an individual purporting to be the agent of another enters into a contract to sell land belonging to the principal, the latter cannot ratify the contract if, between the contract date and the attempted ratification, the principal had himself or herself disposed of the property. The principal cannot defeat the authorized intermediate sale made by himself or herself and validate the prior unauthorized sale made by the agent because, at the time of the attempted ratification, the principal no longer had power to contract for sale of the land (*Cook v. Tullis*, 85 U.S. 332 (1873)).

20. McInnes is barred from lawfully ratifying the forged Goodwin indorsements because an authorized intermediate sale of the Note by MNI to Credit Suisse First Boston Mortgage Securities Corp. had occurred on or around November 4, 2005.

21. MNI, by and thru McInnes, no longer had the power to contract for sale of the Note to USB when the R&C was signed by McInnes on June 29, 2016. A copy of the MNI transaction record of the intermediate sale by MNI of the Note on or around November 4, 2005, included in the ninety-seven page MNI response, is attached hereto as **[EXHIBIT O]**.

## TRAIL OF THE NOTE

22. The Note sent by MNI on or around November 4, 2005 to SPS contained no forged Goodwin indorsements.

23. The Note received from SPS on or around May 1, 2006 by WFB contained no forged Goodwin indorsements.

24. The Goodwin indorsements were forged on the Note while in the exclusive care, custody and control of WFB sometime between May 1, 2006 when WFB took over servicing of the Note and November 6, 2009 when WFB initiated foreclosure against Plaintiffs.

25. Accordingly, the forged Goodwin indorsements were produced by employees or agents of WFB and cannot lawfully be ratified by McInnes because they were not the actions of MNI agents and McInnes is barred from ratifying the acts of a WFB employee or agent.

## COUNT I

### (Common Law Fraud against Defendants)

26. Plaintiffs repeat and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

27. The elements of fraud or intentional misrepresentation are set forth in Union Bank v. Jones, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980) as follows:

> An action for fraud and deceit will lie upon an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage.

8

See also Quintin v. Miller, 138 Vt. 487, 489, 417 A.2d 941, 943 (1980).

28. **Intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker.**

   a. WFB's claim to Plaintiffs via US Mail in an April 12, 2011 letter from Lobe & Fortin LLC, and at all times since then, that the Note was lawfully endorsed by MNI and transferred to USB is an intentional misrepresentation that WFB intended Plaintiffs to rely on which was false when made by WFB and known to be false by WFB when made. This intentional misrepresentation is fraudulent because WFB know at the time it was made that the Note had not been lawfully endorsed and transferred to USB. A copy of Lobe's April 12, 2011 letter is attached hereto as **[EXHIBIT P]**.

   b. K&L's claim in the June 17, 2015 Demand Letter sent to MNI from Patterson that the Note was fraudulently transferred to USB is an intentional misrepresentation of existing fact that affects the essence of the transaction and was false when made by K&L and known to be false by K&L when made. This statement is fraudulent because K&L, representing WFB, knew on June 17, 2015 that the Note had not been lawfully indorsed by an employee or agent of MNI.

   c. The content and context of the June 29, 2016 R&C drafted by K&L, DeMarco and Patterson is an intentional misrepresentation of existing fact that affects the essence of the transaction which K&L, DeMarco and Patterson intended Plaintiffs to rely on which was false when made by K&L, DeMarco and Patterson and known to be false by K&L, DeMarco and Patterson when made. K&L, DeMarco and Patterson all knew in August 2016 that there was an authorized intermediate sale of the Note by MNI in November 2005 and that therefore MNI and McInnes no longer had the

9

power to contract for the sale of the Note to USB on June 29, 2016 when the R&C was signed by McInnes.

d. The content and context of the June 29, 2016 R&C signed by McInnes at MNI offices in Maine is an intentional misrepresentation of existing fact that affects the essence of the transaction which MNI intended Plaintiffs to rely on which was false when made by McInnes and MNI and known to be false by McInnes and MNI when made. MNI, McInnes, Smith, Groshev, all knew in June 2016 that there was an authorized intermediate sale of the Note by MNI on or around November 4, 2005 and that therefore MNI and McInnes no longer had the power to contract for the sale of the Note to USB when the R&C was signed by McInnes on June 29, 2016.

29. **Was not open to the defrauded party's knowledge.**

a. The intentional misrepresentation of existing facts made by WFB, K&L and MNI at all times since November 6, 2009 via US Mail, email and in court filings was not open to Plaintiffs knowledge until receipt of the Judicial Subpoena Duces Tecum responses from MNI and WFB February 14, 2020.

b. WFB intentionally and maliciously withheld knowledge from Plaintiffs by refusing previously to respond to numerous Plaintiffs' Qualified Written Requests sent to WFB, starting in 2011, demanding the documents which were eventually supplied in the February 14, 2020 WFB response to Plaintiffs' subpoena.

c. K&L & MNI attorneys intentionally and maliciously withheld knowledge from Plaintiffs of the details of the drafting, negotiating and signing by McInnes of the unlawful R&C until MNI disclosed these details in their February 14, 2020 response to Plaintiffs' subpoena.

FILED
FEB 28 2020
VERMONT SUPERIOR COURT

10

30. **Was relied on by the defrauded party to his damage.**
    a. WFB initiated foreclosure against Plaintiffs using the Note with the forged Goodwin indorsements on November 6, 2009. Plaintiffs relied on the intentional misrepresentations of the material facts as detailed above and have prosecuted at great expense their investigation into Defendants fraudulent claims to allow themselves to defend against the imminent foreclosure.
    b. K&L continued litigation in the initiated foreclosure against Plaintiffs using the Note with the forged Goodwin indorsements since August 2016. Plaintiffs relied on K&L's intentional misrepresentations of the material facts as detailed above and have prosecuted at great expense their investigation into Defendants fraudulent claims to allow themselves to defend against the imminent foreclosure.
    c. Plaintiffs have damages totaling over $192,000 including, attorney's fees, legal research, court costs and fees which would not have been expended had WFB not fraudulently indorsed the Note and unlawfully initiated foreclosure. **[Plaintiffs attorney's invoices, in most instances include privileged information. Redacted statements available for *in camera* review when appropriate.]**

WHEREFORE, Plaintiffs request the following relief against Defendants:

1. A finding that the forged Goodwin indorsement stamp and forged Goodwin indorsement signature rendered the Note void ab initio.

2. A finding that no party has standing to enforce the Note or Mortgage.

3. An award of compensatory damages in an amount of actual attorney's

11

fees, legal research fees, court costs and other fees plus, prejudgment interest, exemplary damages, and punitive damages for Defendant's common law fraud.

4. Triple damages as provided by statute because Defendants' fraud was intentional and malicious.

5. Such other relief as may be just and proper.

Dated:   March 6, 2020
         Weston, Vermont

Respectfully submitted,

PETER & NICOLE DERNIER

By: */s/ Peter Dernier*
      Peter Dernier

*Pro Se Plaintiffs Peter and Nicole Dernier*

1086 Route 100
Weston, Vermont 05161
Phone: (802) 549-5011