UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

PETER DERNIER, NICOLE DERNIER,   )
  )
    Plaintiffs,   )
  )
    v.   )      Case No. 2:20-cv-56
  )
MORTGAGE NETWORK, INC., IRYNA   )
GROSHEV, DOUGLAS N. SMITH,   )
ROBERT A. MCINNES, K&L GATES,   )
LLP, TIMOTHY R. DEMARCO, JEFFREY   )
S. PATTERSON,   )
  )
    Defendants.

## OPINION AND ORDER
(Docs. 4, 7, 30)

Plaintiffs Peter and Nicole Dernier filed this action in Vermont state court alleging

common law fraud.   Defendants Mortgage Network, Inc. ("MNI"), Douglas N. Smith, Robert A.

McInnes, and Iryna Groshev (the "MNI Defendants") subsequently removed the case to this

Court.  Plaintiffs now move to remand, arguing Defendants' removal was untimely.  The MNI

Defendants have moved to dismiss the Complaint under Rule 12 of the Federal Rules of Civil

Procedure, and for sanctions under Rule 11.  For the reasons set forth below, Plaintiffs' motion

to remand (Doc. 4) is DENIED, the MNI Defendants' motion to dismiss (Doc. 7) is GRANTED

in part and DENIED in part as moot, and the MNI Defendants' motion for sanctions (Doc. 30) is

DENIED.

**Procedural Background**

This is not Plaintiffs' first case alleging fraud against the MNI Defendants.  In a prior

case, *Dernier v. U.S. Bank National Association*, 2:16-cv-230 (D. Vt. Aug. 22, 2016), Plaintiffs

alleged fraud and conspiracy to commit fraud against U.S. Bank, MNI, and Defendant McInnes, claiming irregularities in the transfer of a promissory note and mortgage on their property. Plaintiffs asked the Court to quiet title and discharge the mortgage.  McInnes and MNI moved to dismiss, arguing that Plaintiffs had failed to state a conspiracy claim, and that their fraud claim failed to allege the required elements of reliance and damages.  On June 8, 2017, the Court granted the motions to dismiss without prejudice to future requests for leave to amend.

On May 8, 2018, the Court dismissed Plaintiffs' Third Amended Complaint with prejudice.  The Court noted it was "unpersuaded by [the Derniers'] attempt to argue that no entity owns the note and that their mortgage should therefore be completely discharged.  [The Derniers] clearly took out a mortgage to purchase their house."  *Id.*, Opinion & Order at 10 (D. Vt. May 8, 2018).  The Court further noted that, of the two possible owners of the note, one waived any claim to ownership: "There is no other entity besides [U.S. Bank] asserting that it owns the note." *Id.* at 10-11.

The Court subsequently denied two motions seeking relief from the May 8, 2018 Opinion and Order.  In their first motion for relief, filed March 13, 2020, the Derniers claimed to have new evidence supporting their claims.  The new evidence allegedly confirmed that the promissory note was delivered by MNI to Select Portfolio Service, Inc. ("SPS") in November 2005, thereby rendering a 2016 ratification by MNI invalid.  The Court denied the motion, noting it had already considered and rejected Plaintiffs' arguments that the 2016 ratification was invalid and that a prior endorsement stamp had been forged.  *Id.*, Opinion & Order at 5-6 (D. Vt. July 9, 2020).

In their second motion for relief, filed July 17, 2020, the Derniers asserted that counsel for U.S. Bank committed a fraud upon the Court pertaining to the validity of the ratification.  In

denying the motion, the Court noted that the "Derniers have asserted fraudulent ratification arguments in prior filings."  *Id.*, Opinion & Order at 3 (D. Vt. Oct. 16, 2020).  The Court concluded that "the Derniers are presenting arguments that the Court has previously rejected. Framing those issues as products of attorney misconduct does not heighten the merits of their claims."  *Id.* at 4.

### Allegations of the Complaint

Plaintiffs' Complaint summarizes their claim as follows:

This matter is being filed by the Plaintiffs seeking damages for common law fraud, attorney's fees and costs.  Defendants in this matter have intentionally misrepresented material facts, effecting the essence of Plaintiff's promissory note [] that were false when made by Defendants and known to be false by Defendants when made–in the matter of *Dernier v. US Bank, NA* (2:16-cv-00230-WKS).

(Doc. 16 at 2, ¶ 12.)  Specifically, Plaintiffs allege that Wells Fargo Bank National Association "initiated foreclosure" against them in November 2009.  (*Id.* at 3, ¶ 13.)  In 2014, Plaintiffs received from former MNI employee Chad Goodwin a sworn affidavit attesting that the indorsement stamp and signature on the Note were forgeries.  In June 2016, Defendant K&L Gates "submitted to Plaintiffs . . . a Ratification and Consent (R&C) signed by McInnes, president of MNI, in an attempt to rebut the Goodwin Affidavit with the intent that Plaintiffs would rely on the R&C as a lawful ratification of the forged Goodwin indorsements."  (*Id.* ¶ 15.)

Plaintiffs further allege: "[Defendant] McInnes is barred from lawfully ratifying the forged Goodwin indorsements because an authorized intermediate sale of the Note by MNI to Credit Suisse First Boston Mortgager Securities Corp. had occurred on or around November 4, 2005."  (*Id.* at 7, ¶ 20.)  Plaintiffs assert that, in November or December 2005, MNI sent the Note to SPS with no forged Goodwin indorsements and, in May 2006, Wells Fargo Bank received the Note from SPS with no forged Goodwin indorsements.  Thus, they infer: "The Goodwin indorsements were forged on the Note while in the exclusive care, custody and control of WFB

3

[Wells Fargo Bank] sometime between May 1, 2006 when WFB took over servicing of the Note and November 6, 2009 when WFB initiated foreclosure against Plaintiffs." (*Id.* at 8, ¶ 24.) "Accordingly," Plaintiffs conclude, "the forged Goodwin indorsements were produced by employees or agents of WFB and cannot lawfully be ratified by [Defendant] McInnes because they were not the actions of MNI agents and McInnes is barred from ratifying the acts of a WFB employee or agent." (*Id.* ¶ 25.)

Based on these allegations, Plaintiffs assert one count of common law fraud against all Defendants. As relevant here, Plaintiffs allege with regard to the MNI Defendants:

> The content and context of the June 29, 2016 R&C signed by McInnes at MNI offices in Maine is an intentional misrepresentation of existing fact that affects the essence of the transaction which MNI intended Plaintiffs to rely on which was false when made by McInnes and MNI and known to be false by McInnes and MNI when made. MNI, McInnes, Smith, [and] Groshev, all knew in June 2016 that there was an authorized intermediate sale of the Note by MNI on or around November 4, 2005 and that therefore MNI and McInnes no longer had the power to contract for the sale of the Note to USB when the R&C was signed by McInnes on June 29, 2016.

(*Id.* at 10, ¶ 28.d.)

Plaintiffs allege the intentional misrepresentation of facts by Defendant MNI was not open to their knowledge until they received documentary responses to subpoenas in February 2020. They further assert MNI attorneys "intentionally and maliciously withheld knowledge from Plaintiffs of the details of the drafting, negotiating and signing by McInnes of the unlawful R&C until MNI disclosed these details in their February 14, 2020 response to Plaintiffs' subpoena." (*Id.* ¶ 29.c.) Plaintiffs argue that no party has standing to enforce the Note or Mortgage, and are seeking compensatory, exemplary, and punitive damages, tripled "as provided by statute" because Defendants' fraud was allegedly intentional and malicious. (Doc. 16 at 11-12.)

**Discussion**

4

I.      **Motion to Remand**

Plaintiffs move to remand this case to state court, arguing that Defendants' removal was untimely because they "did not file their Notice of Removal within thirty (30) days after service of process . . . and Defendants did not satisfy the 'unanimity rule.'" (Doc. 4 at 1.). The MNI Defendants oppose remand, asserting that because no defendant had been properly served in accordance with state law when they removed the case, the thirty-day removal period had not yet begun to run.  The MNI Defendants further submit that as a result of Plaintiffs' failure to serve defendants, the requirement that all defendants consent to removal, *i.e.* the unanimity rule, does not apply.

Generally, any civil suit initiated in state court over which a district court would have had original jurisdiction "may be removed by . . . the defendants, to the district court of the United States for the district . . . embracing the place were such action is pending."  28 U.S.C. § 1441(a). Section 1441 permits removal on the basis of either federal question jurisdiction or diversity of citizenship.  Section 1446 provides the procedure for the removal of civil actions and requires that the notice of removal "be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief . . . or within 30 days after the service of summons upon the defendant."  28 U.S.C. § 1446(b)(1).  The removal statute further provides that when a civil action is removed under § 1441(a), "all defendants who have been properly joined and served must join in or consent to the removal of the action."  *Id.* § 1446(b)(2)(A).  "[F]ederal courts construe the removal statute narrowly, resolving any doubts against removability."  *Platinum-Montaur Life Sciences, LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019).  The party invoking federal jurisdiction bears the burden to establish the existence of diversity jurisdiction.  *Id.* at 618.

As recounted above, Plaintiffs initially filed their Complaint in Vermont state court on February 28, 2020.  On April 14, 2020, the MNI Defendants filed a Notice of Removal based on diversity jurisdiction.  Plaintiffs assert that on March 9, 2020 the MNI Defendants "were properly served with a copy of the Complaint and a Certificate of Service Form via Priority US Mail," (Doc. 4 at 2), and that on March 6, 2020 the remaining Defendants were "properly served," submitting a copy of a Certificate of Service stating "the foregoing was served by ECF." (Doc. 4-3 at 2-3.)  Accordingly, Plaintiffs argue the deadline to remove the case was April 8, 2020, rendering the MNI Defendants' removal untimely.

A "defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). Plaintiffs have not demonstrated—and neither the state court filings nor this Court's docket reflect—service of a summons, *i.e.* formal service, on any defendant.[1]  *See* Vt. R. Civ. P. 4(b) ("The summons shall . . . state . . . the time and manner within which these rules require the defendant to respond to the complaint, and shall notify defendant that in case of the defendant's failure to do so judgment by default will be rendered against the defendant[.]");  *see also* Fed. R. Civ. P. 4(a)(1)(D)-(E) ("A summons must . . . state the time within which the defendant must appear and defend; [and] notify the defendant that a failure to appear and defend will result in a default judgment against the defendant[.]").  Unless a named defendant agrees to waive service, a summons is required to direct an individual or entity to participate in a civil action or forgo

---

[1] The state court found that, as of April 16, 2020, the state court file contained no proof of service of the summons and complaint on Defendant DeMarco.  (*See* Doc. 18.)

procedural or substantive rights.  *See Murphy Bros.*, 526 U.S. at 351-53 (explaining the legislative history of § 1446 makes clear Congress did not intend "to dispense with the historic function of service of process as the official trigger for responsive action by an individual or entity named defendant").

The Supreme Court has explained the possibilities for the commencement of the thirty-day period for removal as follows:

> First, if the summons and complaint are served together, the 30–day period for removal runs at once.  Second, if the defendant is served with the summons but the complaint is furnished to the defendant sometime after, the period for removal runs from the defendant's receipt of the complaint.  Third, if the defendant is served with the summons and the complaint is filed in court, but under local rules, service of the complaint is not required, the removal period runs from the date the complaint is made available through filing.  Finally, if the complaint is filed in court prior to any service, the removal period runs from the service of the summons.

*Id.* at 354.  Each of those potential triggers of the thirty-day removal period requires service of a summons, which in this case is lacking.  Plaintiffs' argument that the removal period began to run when defendants received a copy of the Complaint alone fails.  *See Pietrangelo v. Alvas Corp.*, 664 F. Supp. 2d 420, 429 (D. Vt. 2009) ("[Plaintiff's] contention that the 30-day period commenced when the defendants received copies of his initial filings . . . is inconsistent with the *Murphy Bros.* holding that the clock only commences with 'formal process.'").  Accordingly, Defendants' Notice of Removal was timely filed, and as the remaining defendants have not been properly served, the unanimity rule does not apply.  Plaintiffs' motion to remand is denied.

## II.    Motion to Dismiss

The MNI Defendants move to dismiss Plaintiffs' fraud claim under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over Defendants Groshev, Smith, and McInnes.  They also move to dismiss under Rule 12(b)(5) for insufficient service of process, and

Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Plaintiffs oppose the motion as "untimely and belated" under Federal Rule of Civil Procedure 81.  (Doc. 23 at 4.)

A.    **Timeliness**

Rule 81 concerns the applicability of the federal rules to removed actions.  Under subsection (c)(2), a defendant who did not answer a complaint prior to removal must answer or otherwise move "within the longest" of:

(A) 21 days after receiving through service or otherwise—a copy of the initial pleading stating the claim for relief;

(B) 21 days after being served with the summons for an initial pleading on file at the time of service; or

(C) 7 days after the notice of removal is filed.

Fed. R. Civ. P. 81(c)(2)(A)-(C).

Plaintiffs' Rule 81 argument fails because, as discussed above, the MNI Defendants were not properly served with a summons and complaint prior to removal.  While Plaintiffs argue that subsection (A) was "triggered" by the MNI Defendants' receipt of the Complaint, subsection (B) explicitly requires "being served with the summons for an initial pleading on file at the time of service[.]"  Fed. R. Civ. P. 81(c)(2)(B).  Rule 81 provides that the longest period applies, and the MNI Defendants time to respond under subsection (B) has not expired.  *Compare Francis v. Accubanc Mortgage Corp.*, No. 19-cv-902, 2020 WL 2086038, at *3 (S.D.N.Y. Apr. 30, 2020) ("Because 21 days had expired or were just about to expire between *service* and removal, the Court focuses on Subsection (C).") (emphasis added).  Accordingly, the motion to dismiss is not untimely.  *See Murphy Bros.*, 526 U.S. at 347 (noting that a defendant is "not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process").

B.    **Rule 12(b)(2)**

The individual MNI Defendants argue they are each residents of Massachusetts, and Plaintiffs fail to allege they "did anything within the state of Vermont that would provide the courts of the state of Vermont with personal jurisdiction over them." (Doc. 7 at 22.) To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff has the burden of making a *prima facie* case showing that personal jurisdiction over the defendant exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). In assessing personal jurisdiction on a Rule 12(b)(2) motion, the court is not required to "draw argumentative inferences in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (internal quotation marks and citation omitted), nor must it "accept as true a legal conclusion couched as a factual allegation." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (internal quotation mark omitted).

"A court cannot exercise personal jurisdiction over a defendant unless doing so comports with constitutional due process principles." *Licci*, 673 F.3d at 60. Most relevant here is "whether the [individual] defendant[s] ha[ve] sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). For purposes of this inquiry, a distinction is made between "specific" jurisdiction and "general" jurisdiction. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (internal quotation marks and citations omitted). "For a State to exercise jurisdiction consistent with due process, that relationship must arise out of contacts that the defendant himself creates with the forum, and must be analyzed with regard to the defendant's contacts with the forum itself, not with persons residing there." *Id.* (internal quotations and citations omitted).

Defendants Groshev, Smith, and McInnes argue that they have created no contacts with Vermont. Indeed, Plaintiffs' sole jurisdictional allegation is that they themselves reside in Vermont (Doc.16 at 1, ¶ 1.) The individual MNI Defendants all reside outside of Vermont. The gravamen of the fraud claim against the MNI Defendants is that "the June 29, 2016 R&C signed by [Defendant] McInnes at MNI offices in Maine is an intentional misrepresentation of existing fact." *(Id*. at 10, ¶ 28.d.) The individual Defendants contend that the only link between them and the state of Vermont is that Plaintiffs reside in Vermont and allegedly suffered injury in Vermont. These two facts alone are insufficient to establish the individual Defendants' minimum contacts with Vermont. *See Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum state. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). Accordingly, Plaintiffs' claim against defendants Groshev, Smith, and McInnes is dismissed for lack of personal jurisdiction under Rule 12(b)(2).

### C.     Rule 12(b)(5)

The MNI Defendants further argue that because Plaintiffs did not properly effect service under either federal or state law, the action must be dismissed without prejudice under Rule 12(b)(5) for insufficient service of process. "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (internal quotation marks omitted). Plaintiffs have not attempted to demonstrate adequate service of formal process, instead relying on their interpretation of the phrase "through service or otherwise" and their position that the MNI Defendants had "otherwise" received a copy of the Complaint on March 9, 2020.

"In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[] to matters outside the complaint to determine whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016). Plaintiffs filed the original state court action in Vermont Superior Court for Windsor County on February 28, 2020. (Doc. 16.) Plaintiffs assert the MNI Defendants "received the complaint through service or otherwise on March 9, 2020 by delivery via United States Priority Mail to the registered agents for MNI," (Doc. 23 at 1), and attach a certificate of service and tracking history. (*See* Doc. 23-2, 23-4.) Plaintiffs did not send either a summons or waiver of service of summons form.

When, prior to removal from state court, "one or more of the defendants has not been served with process," as the Court has determined is the case here, "such process or service may be completed or new process issued in the same manner as in cases originally filed" in federal district court. 28 U.S.C. § 1448. The Federal Rules of Civil Procedure require service to be made in accordance state law where the district court is located,[2] or with the federal requirements. Fed. R. Civ. P. 4(e). Under both state and federal law, proper service is accomplished when the plaintiff causes the summons and a copy of the complaint to be served on the defendant "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(c)(1), 4(m); *see also* Vt. R. Civ. P. 4(d). The defendant, however, "has a duty to avoid unnecessary expenses of serving the summons," and accordingly the plaintiff "may notify [the] defendant that an action has been commenced and request that the defendant waive service of a summons." Fed. R. Civ. P. 4(d)(1); *see also* Vt. R. Civ. P. 4(l)(2). The notice and waiver request must be in writing addressed to the defendant or an authorized agent; include a copy of the complaint, two copies of

---

[2] The Vermont Rules of Civil Procedure for service of process largely mirror the Federal Rules. *See* Vt. R. Civ. P. 4.

the waiver form, and a prepaid means for returning the form; inform the defendant of the consequences of waiving and not waiving service; allow at least 30 days for the defendant to return the waiver; and be sent by reliable means such as via first-class mail.  Fed. R. Civ. P. 4(d)(1)(A)–(G); *see also* Vt. R. Civ. P. 4(l)(3).  If the defendant fails to execute the waiver "without good cause," the court must order the defendant to pay "the expenses later incurred in making service" and "the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses."  Fed. R. Civ. P. 4(d)(2); *see also* Vt. R. Civ. P. 4(l)(6).

Federal Rule of Civil Procedure 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff– must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Rule 4(l)(1) requires proof of service be made to the Court.

In this case, the Court has determined Plaintiffs did not effect proper service, including a summons, on any of the MNI Defendants prior to removal of the action.  Following removal, although Plaintiffs had the benefit of an additional 90 days within which to request a summons and complete service on Defendants, Plaintiffs failed to accomplish service.  Because Plaintiffs failed to properly serve any MNI Defendants with service of process, including a summons, service was insufficient.  Accordingly, the MNI Defendants' motion to dismiss under Rule 12(b)(5) is granted and Plaintiffs' claim is dismissed without prejudice.

Under Rule 4(m), the Court is empowered to extend "for an appropriate period" the 90-day period "if the plaintiff shows good cause for the failure" to properly serve process on a defendant.  Fed. R. Civ. P. 4(m).  Here, Plaintiffs have relied on their interpretation of the word "otherwise" to continue to insist that receipt of the Complaint constituted sufficient service of process.  This was error, and self-represented plaintiffs are not excused from complying with

procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("We have never

suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse

mistakes by those who proceed without counsel."); *Caidor v. Onondaga Cnty.*, 517 F.3d 601,

605 (2d Cir. 2008) (holding that self-represented litigants must comply with procedural rules).

As Plaintiffs have neither sought an extension of time nor demonstrated good cause for such an

extension, the Court declines to extend the period for service of process.[3]  *See Zapata v. City of*

*New York*, 502 F.3d 192, 196 (2d Cir. 2007) (noting the determinations of whether good cause is

present and what if any extension may be appropriate are made in the district court's discretion).

      **D.**       **Rule 12(b)(6)**

Because the case is being dismissed without prejudice, the MNI Defendants' motion to

dismiss under Rule 12(b)(6) is moot.

**III.**    **Motion for Sanctions**

On August 3, 2020, the MNI Defendants moved for sanctions against Plaintiffs for filing

the Complaint, moving to remand, seeking default as to the MNI Defendants, and opposing the

MNI Defendants' motion to dismiss based on "objectively unreasonable and legally untenable

positions." (Doc. 30.)  Plaintiffs oppose the motion. (Doc. 31.)

Federal Rule of Civil Procedure 11 requires the "attorney or unrepresented party" filing

litigation documents to certify that the documents:

> (1) [are] not being presented for any improper purpose, such as to harass,
> cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims defenses, and other legal contentions are warranted by
> exiting law or by a nonfrivolous argument for extending, modifying, or reversing
> existing law or for establishing new law; [and]

---

[3] The Court also notes that, as explained above, it has considered Plaintiffs' new allegations underlying their sole claim of fraud against MNI in the context of *Dernier v. U.S. Bank National Association*, 2:16-cv-230 (D. Vt. Aug. 22, 2016).

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)-(3).  Under Rule 11(c), a motion for sanctions must be served but may not be filed "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service."  *Id.* 11(c)(2).  If, on motion and after notice and a reasonable opportunity to be heard, the court determines that Rule 11(b) has been violated, "the court may impose an appropriate sanction," such as "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  *Id.* 11(c)(1), (4).  A district court's determination of sanctions under Rule 11 is reviewed for abuse of discretion.  *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018).

"[T]he standard for triggering sanctions under Rule 11 is objective unreasonableness." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 178 (2d Cir. 2012) (internal quotation marks omitted).  With respect to legal contentions, the "operative question is whether the argument is frivolous, *i.e.*, the legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." *Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) (internal quotation marks omitted).  The imposition of Rule 11 sanctions "should be reserved for extreme cases, and 'all doubts should be resolved in favor of the signing'" party.  *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016) (quoting *K.M.B. Warehouse Distribs., Inc. v. Walker Mtg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995)).  Rule 11 applies to self-represented litigants.  *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989).

Under its inherent powers, a district court has the authority to award attorney's fees to the prevailing party when the losing party "has acted in bad faith, vexatiously, wantonly, or for

oppressive reasons." *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116,

129 (1974); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986).

The MNI Defendants assert that sanctions against Plaintiffs are necessary because

"Plaintiffs attempted to make an end run around this Court" by filing a new action in state court

after this Court dismissed their fraud claims.  (Doc. 30 at 9.)  They further assert that Plaintiffs'

arguments regarding service of process are objectively unreasonable and unsupported.

Defendants seek "an appropriate sanction against Plaintiffs for violating Rule 11."  (*Id.* at 18.)

Although Plaintiff has filed multiple actions concerning the MNI Defendants'

involvement in the foreclosure of their Vermont property, this case is dismissed at an early stage

under Federal Rule of Civil Procedure 12(b)(2) and (5) for lack of personal jurisdiction and

insufficient service of process.  Accordingly, the Court did not reach the merits of Plaintiff's

claim in this case.  *See Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 54-55

(2d Cir. 2016) (noting that where a court lacks jurisdiction, it "lacks the power to adjudicate the

merits of the case").  Because "Courts should be cautious in granting Rule 11 sanctions,"

*Sorenson*, 170 F. Supp. 3d at 626, the MNI Defendants' Rule 11 motion is DENIED.

## Conclusion

For the reasons discussed above, Plaintiffs' motion to remand (Doc. 4) is DENIED, the

MNI Defendants' motion to dismiss (Doc. 7) is GRANTED in part and DENIED in part as moot,

and the MNI Defendants' motion for sanctions (Doc. 30) is DENIED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 23rd day of March 2021.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge